**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDRE SILVA,<br><br>Plaintiff,<br><br>v.<br><br>MARCO A. RUBIO<br>in his official capacity as Secretary of the U.S. Department of State, et al.<br><br>Defendants. | Civil Action No. 25-2389 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Andre Silva, brings this civil action against the defendants—Marco Rubio, the Secretary of the United States Department of State; Matt Pierce, the Acting Principal Deputy Assistant Secretary of State; Richard H. Glenn, the Chargé d'Affaires of the United States Embassy in Sao Paulo, Brazil; and John Doe, a consular officer also at the United States Embassy in Sao Paulo, Brazil—pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b). See Plaintiff's Original Complaint for Writ in the Nature of Mandamus and Violation of the Administrative Procedure Act ("Compl.") ¶¶ 4, 12, ECF No. 1. The plaintiff alleges that the defendants have unreasonably delayed adjudication of his visa application and seeks an order from this Court compelling the defendants to act on his visa application. See id. at 8. Currently pending before the Court is the defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Motion to Dismiss and Memorandum in Support Thereof ("Defs.' Mot.") at 1, 3, ECF No. 4.

Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion.

## I. BACKGROUND

### A. Statutory Background

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, foreign workers engaged in specialty occupations may temporarily work for employers in the United States on a nonimmigrant visa called an H-1B visa. See 8 U.S.C. § 1101(a)(15)(H)(i)(b). A specialty occupation requires both "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor" and the "attainment of a bachelor's degree or higher in a specific specialty, or its equivalent[.]" 8 C.F.R. § 214.2(h)(4)(ii).

The H-1B visa process consists of three steps: first, an employer must request "a certification from the Department of Labor that it has filed a labor condition application in the occupational specialty in which the alien[] will be employed." Sinha v. Blinken, No. 20-cv-2814 (DLF), 2021 WL 4476749, at *1 (D.D.C. Sept. 30, 2021) (alteration in original) (quoting 8 C.F.R. § 214.2(h)(4)(i)(B)(1)). Next, the employer must file an I-129 petition with the United States Citizenship and Immigration Services ("USCIS") "for review of the services or training and for determination of the alien's eligibility for classification as a temporary employee or trainee." Id. (quoting 8 C.F.R. § 214.2(h)(1)(i)). Lastly, the petitioner must complete "the actual visa application through the Department of State by applying at his local embassy or consulate," which "typically includes an in-person interview that results in a grant or denial of the visa application." Id.; see 8 C.F.R. § 214.2(h)(2).

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 6; and (2) the Reply in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 10.

After the applicant has applied at his local embassy or consulate, a consular officer "must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). The consular officer may refuse to issue a visa under Section 221(g) of the INA, which provides that no visa shall be issued to a noncitizen if it appears that the noncitizen "(1) is ineligible to receive a visa . . . (2) the application fails to comply with the provisions of [the INA], or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g). The consular officer "cannot temporarily refuse, suspend, or hold the visa for future action" after the interview, Datta v. Rubio, No. 24-cv-2937 (PLF), 2025 WL 752643, at *1 (D.D.C. Mar. 10, 2025) (quoting Vol. 9, Foreign Affairs Manual ("FAM") §§ 504.1-3(g), 504.9-2), and must complete this process "properly and promptly . . . in accordance with the applicable regulations and instructions[,]" id. (quoting 22 C.F.R. § 41.106). The consular officer may, however, "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA if he or she determines that "additional information from sources other than the applicant may help establish an applicant's eligibility for a visa." Id. (internal citations omitted).

**B. Factual Background**

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified. The plaintiff is a citizen of Brazil and is currently an "Assistant Teaching Professor of Robotics at the Worcester Polytechnic Institute[,]" Compl. ¶ 1, located in Worcester, Massachusetts, id. at Exhibit ("Ex.") A, ECF No. 1-1. He received an H-1B visa through the H-1B lottery system during the 2021–22 fiscal year. Id. In December 2024, the plaintiff returned to Brazil to renew his H-1B "by submitting his Application with the U.S. Embassy in Sao Paulo, Brazil, and requesting the issuance of the corresponding H-1B visa stamp." Id. On January 10,

2025, "[the p]laintiff appeared for his non-immigrant visa interview." Id. ¶ 2. "At the conclusion of [his] interview, the interviewing officer . . . informed [the p]laintiff that his case was being 'refused' under administrative processing for the purpose of 'verify[ing] the applicant's qualification for this visa.'" Id. ¶ (third alteration in original). He claims that his visa application "has remained refused under administrative processing . . . without completion of processing or any explanation beyond a generic statement that the case is in 'administrative processing[,]'" id. ¶ 2, and that "[his] inquiries have resulted in continuous responses from the U.S. Embassy in Sao Paulo, Brazil, stating that [his] Application is undergoing administrative processing and without any indication as to when the adjudicative process will be completed[,]" id. ¶ 23.

The plaintiff contends that his "continued employment with Worcester Polytechnic Institute, and his position as an Assistant Teaching Professor of Robotics, are in a precarious position" and "[w]ithout judicial intervention, [he] will likely suffer devastating financial losses and a significant setback in his career and future in the United States." Id. ¶ 3. Because the plaintiff alleges that the defendants' delay in adjudicating his visa application is unreasonable, he asks that the Court compel the defendants to "perform their duty to adjudicate [his] [n]onimmigrant visa [a]pplication immediately." Id. at 8.

### C. Procedural Background

The plaintiff filed his complaint on July 24, 2025. See Compl. at 1. On September 23, 2025, the defendants filed their motion to dismiss. See Defs.' Mot. at 1. The plaintiff filed his opposition to the motion to dismiss on October 7, 2025, see Pls.' Opp'n at 1, and the defendants filed their reply to the opposition on December 8, 2025, see Defs.' Reply at 1.

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Under Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citation omitted). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas

v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B. Motions to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing

Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

The plaintiff seeks a writ of mandamus under 28 U.S.C. § 1361 or an order compelling agency action under the APA based on unreasonable delay. Compl. ¶¶ 12–13. The defendant argues that: (1) there is no discrete agency action that a consular officer is required to take on the plaintiff's visa application, Defs.' Mot. at 4–8; (2) the plaintiff's claims are barred by the consular non-reviewability doctrine, id. at 9–12; and (3) even if the Court reaches the merits, the plaintiff is not entitled to relief because any delay in adjudicating his visa application is not unreasonable, id. at 12–18. The Court will address each argument in turn.

### 1. Whether There Is a Non-discretionary Duty to Act on the Plaintiff's Visa Application

Before the Court can consider the merits of the plaintiff's mandamus claim, the plaintiff "must first establish that the agency [whose action he seeks to compel] has violated a crystal-clear legal duty" and that he has "no other adequate means to attain the relief [he] desire[s]." Pour v. Rubio, No. 25-cv-573 (JEB), 2025 WL 2374559, at *3 (D.D.C. Aug. 14, 2025) (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)). Similarly, as to the plaintiff's APA claim, the plaintiff must "assert[] that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).

The defendants argue that it is not required to take any additional discrete action because a consular officer has already refused the plaintiff's visa application pursuant to Section 221(g). Defs.' Mot. at 4. The defendants rely primarily on Karimova v. Abate, 2024 WL 3517852, an unpublished decision of the District of Columbia Circuit. See id. at *4–8. In that case, as here, the plaintiff sought an order compelling adjudication of a visa application that had been refused by a consular officer after an in-person interview, but was then placed into "administrative processing." Id. at *2.

In Karimova, the D.C. Circuit explained that:

> After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change. As a result, the consular officer may choose to place an officially refused application in administrative processing . . . If the consular officer gets enough new information, . . . the officer can determine sua sponte that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. Unless and until that happens, though, the visa application remains officially refused.

Karimova, 2024 WL 3517852 at *2 (internal citation omitted). The D.C. Circuit concluded that, because the plaintiff "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application[,]" there was no basis to compel agency action, and even if there was, it "at most could have entitled [the plaintiff] to the official refusal decision she already received," id. (first citing 22 C.F.R. § 42.81; then citing INA § 221(g)).

However, this Court has previously noted that the "[Karimova] decision is unpublished, and 'a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition,'" Liu v. Garland, No. 23-cv-1914 (RBW), 2024 WL 3924564, at *5 (D.D.C. Aug. 23, 2024) (citing D.C. Cir. R. 36(e)(2)). And as the defendant recognizes, "there is a raging debate and marked split among the jurists in this District as to the

binding effect of Karimova and whether its reasoning is persuasive." Defs.' Mot. at 8 n.2; see also Datta, 2025 WL 752643, at *6 n.3 (collecting cases discussing the precedential value of Karimova). Therefore, "[w]ithout clear, binding precedent foreclosing [the] plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate specific visas, the assumption of reviewability permits consideration of the merits of [the] plaintiff's claims." Oystacher v. Rubio, et al., 25-cv-3276 (BAH), 2026 WL 1998762, at *5 (D.D.C. July 10, 2026). The Court will therefore assume favorably to the plaintiff that his complaint identifies a clear, non-discretionary duty and proceed to the defendants' other arguments. See Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *5 (D.D.C. July 30, 2024); see also Niyomwungere v. Blinken, 24-cv-1990 (APM), 2024 WL 5075827, at *3 (D.D.C. Dec. 11, 2024) (collecting cases taking this approach).

**2. Whether the Consular Non-reviewability Doctrine Bars the Plaintiff's Claims**

The defendants next argue that "this suit runs headfirst into the consular non-reviewability doctrine, warranting its dismissal under Rule 12(b)(6)." Defs.' Mot. at 9. The consular non-reviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The plaintiff argues that he "does not challenge the discretionary substance of the visa adjudication, but rather the unreasonable delay in adjudicating his application[,]" Pl.'s Opp'n at 7, and "[b]ecause no final adjudication has occurred, the doctrine of consular non-reviewability does not apply[,]" id. at 14.

Although "[s]everal judges in this district have concluded that a consular officer's decision to refuse a visa application for further administrative processing is not a final decision, and thus the consular nonreviewability doctrine does not apply[,]" Datta, 2025 WL 752643, at

*5, as previously indicated, Karimova "casts doubt on the accuracy of the reasoning in those decisions[,]" Sharifishourabi v. Blinken, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024). The Court therefore finds, as other courts in this District have found, that it need not determine the effect of Karimova on the consular nonreviewability doctrine because as indicated below, the plaintiff's claims fail on their merits. See Oystacher, 2026 WL 1998762, at *7 (collecting cases).

### 3. Whether the Plaintiff Has Stated a Claim of Unreasonable Delay

The plaintiff's "claims under the APA and the Mandamus Act share the same standards for obtaining relief." Hajizadeh v. Blinken, No. 23-cv-1766, 2024 WL 3638336, at *4 (D.D.C. Aug 2, 2024) "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984). Courts in this Circuit analyze unreasonable delay using six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Motevali, 2024 WL 3580937, at *6 (quoting TRAC, 750 F.2d at 80). "While not 'ironclad,' the TRAC factors provide 'useful guidance in assessing claims of agency delay.'" Hajizadeh, 2024 WL 3638336, at *4 (D.D.C. Aug. 2, 2024) (quoting In re Core Commc'ns, Inc., 531 F.3d at 855). And, "[t]he first and fourth factors are [the] most important in the visa context." Id. (quoting Da

Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)). Of significant importance, courts in this Circuit have consistently noted that "application of the TRAC factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." Bega v. Jaddou, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa v. Immig. Inv. Program Off., 80 F.4th 330 (D.C. Cir. 2023). Applying the TRAC factors here, the Court concludes that the plaintiff has failed to state a claim on which the relief requested can be granted.

**1. TRAC Factors One & Two**

"The first and most important factor [for the Court to consider] is that 'the time agencies take to make decisions must be governed by a rule of reason.'" In re Core Commc'ns, Inc., 531 F.3d at 855 (quoting TRAC, 750 F.2d at 80). This factor is most commonly analyzed in tandem with the second factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *7 (D.D.C. Oct. 23, 2023); see Hajizadeh, 2024 WL 3638336, at *4 ("The first two factors—requiring agencies to follow 'a rule of reason' related to their timeliness, and the influence of a congressionally imposed timeline—are typically considered together." (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." Ahmadi v. Scharpf, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting Rahman v. Blinken, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). "Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable." Motevali, 2024 WL 3580937, at *6. "And

indeed, recently, the [District of Columbia] Circuit found that a delay of four-and-one-half years was not unreasonable." Id. (citing Da Costa, 80 F.4th at 342).

Here, the plaintiff claims that "[his] application has been pending for an extended period with no meaningful explanation, no clear indication of progress, and no projected timeframe for resolution." Pl.'s Opp'n at 18. To determine the length of delay in immigration processing cases, courts in this Circuit "seem to focus on the delay up to the issuance of the [court's] opinion." Brzezinski v. U.S. Dep't of Homeland Sec., No. 21-cv-376 (RC), 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021). Here, the Complaint indicates that the plaintiff appeared for his interview on January 10, 2025, Compl. ¶ 2, approximately eighteen months ago. Although the Court is sympathetic to the plaintiff's concerns regarding this delay, in light of "the overwhelming trend within this [C]ircuit[,]" the Court must conclude that the defendants' "delay of approximately [eighteen] months is not unreasonable." Motevali, 2024 WL 3580937, at *7. In other words, the first two factors, considered together, favor the defendants.

**2. TRAC Factor Four**

"The fourth TRAC factor, which is 'the effect of expediting delayed action on agency activities of a higher or competing priority,' is particularly important for immigration documentation." See Hajizadeh, 2024 WL 3638336, at *5 (quoting Da Costa, 80 F.4th at 342). "Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space and produce[] no net gain.'" Motevali, 2024 WL 3580937, at *8 (alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "In fact, the [District of Columbia] Circuit 'has refused to grant relief, even [when] all the other facts considered in TRAC favored it, where a judicial order putting the petitioner at the head of

the queue would simply move all others back one space and produce no net gain.'" Id. (alterations in original) (quoting Milligan, 502 F. Supp. 3d at 319)).

The plaintiff argues that "[t]he fourth TRAC factor does not permit an agency to avoid judicial review by invoking abstract 'competing priorities' while offering no specific justification for thee extraordinary delay in a single, fully submitted case." Pl.'s Opp'n at 19. But, "[c]ompelling agency action on [his] visa application would 'impose offsetting burdens on equally worthy' applicants by effectively putting [him] 'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain[.]'" Motevali, 2024 WL 3580937, at *8 (fourth and fifth alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d at 73, 75). In other words, "granting [the p]laintiff [his] requested relief would require the State Department to 'reorder[] [its] priorities' in a case where the 'agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way.'" Id. (alterations and omission in original) (quoting In re Barr Lab'ys, 930 F.2d at 76). "This, the [District of Columbia] Circuit has admonished, is something that courts should not do." Id. Accordingly, for the foregoing reasons, the Court finds that the fourth TRAC factor weighs in the defendants' favor.

**3. TRAC Factors Three & Five**

"The third and fifth factors overlap[,]" and require the Court to consider "the impact on human health and welfare and economic harm, [as well as] the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Here, the plaintiff has alleged that "the delay has caused significant professional and personal harm" because "[he] is unable to fulfill his contractual duties or commence his academic appointment." Pl.'s Opp'n at 21. He has also alleged that "[t]he delay has jeopardized his

employment, caused severe financial strain, and deprived students and the institution of his teaching and research contributions." Id. Although the Court is sympathetic to the plaintiff's position and has no reason to doubt his representations, "without more facts suggesting otherwise, these harms[, standing alone,] do not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendants'] advantage on the more important factors." Hajizadeh, 2024 WL 3638336, at *6; see id. (finding that allegations of "severe emotional distress" and significant financial costs "spent on visa-related expenses" did "not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendant's] advantage on the more important factors"); Da Costa, 80 F.4th at 345 (concluding that the third and fifth TRAC factors did not favor the plaintiffs where "they d[id] not, for example, allege that they [were] unable to access electricity, water, food, or shelter"). These factors therefore weight in favor of the defendant.

**4. TRAC Factor Six**

"The final TRAC factor considers whether the agency's bad faith caused the delay." Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Here, the plaintiff's Complaint "does not allege that a decision on [his] application was delayed intentionally or was the result of any impropriety." Id.; see generally Compl. "Therefore, 'the good faith of the agency in addressing the delay weighs against equitable relief [being granted].'" Sawahreh, 630 F. Supp. 3d at 164 (quoting Milligan, 502 F. Supp. 3d at 319).

## IV. CONCLUSION

For all of the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss.

**SO ORDERED** this 10th day of August, 2026.[2]

REGGIE B. WALTON
United States District Judge

[2] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.